UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Romana Humann, | ) | **ORDER GRANTING** |
| | ) | **DEFENDANTS' MOTIONS FOR** |
| Plaintiff, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| vs. | ) | |
| | ) | |
| KEM Electric Cooperative, Inc., Michael D. Rudolph, and Thomas B. Bair, | ) ) | |
| | ) | Case No. 1:05-cv-073 |
| Defendants. | ) | |

Before the Court are two summary judgment motions filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendants, KEM Electric Cooperative, Inc. ("KEM"), and Michael D. Rudolph, filed a Motion for Summary Judgment on June 8, 2006, seeking summary judgment on all of the plaintiff's claims. On July 17, 2006, the defendant, Thomas B. Bair, filed a Motion for Summary Judgment. For the reasons set forth below, the motions are granted.

I.    BACKGROUND

On May 5, 2005, Ramona Humann commenced this lawsuit in state district court against KEM, Michael D. Rudolph, the general manager/CEO of KEM, and Thomas B. Bair, counsel for KEM. The action was removed to federal court on June 13, 2005. The complaint arises out of Humann's employment at KEM as Manager of Member Services and Marketing. The complaint includes five claims for relief: (1) equitable estoppel/detrimental reliance; (2) deceit; (3) tortious interference with employment; (4) defamation; and (5) a federal overtime claim.

Humann began work at KEM on March 3, 1975. On February 1, 1992, Humann became a salaried employee of KEM as Manager of Member Services and Marketing. Her starting salary was

$2,488 per month. At the time that Humann's employment with KEM terminated, she was earning approximately $4,000 per month.

The position description provided by KEM for the Manager of Member Services and Marketing provides that, "while not all inclusive, ... [it] is a guide for some duties and responsibilities." See Docket No. 13-5. The description goes on to state that objectives for that position include managing the Member Services and Marketing Department and promoting good member and public relations. Id. In that position, Humann reported to the general manager, (Rudolph), and was to direct the Member Service Representative. Humann had many enumerated responsibilities, including planning and organizing member activities and providing input into the planning of human resource development. However, despite the job description for the Manager of Member Services and Marketing position, the actual responsibilities and tasks that were required of Humann in that capacity changed over the course of her employment and are disputed.

On March 21, 1996, KEM adopted an at-will employment policy and issued a bulletin for the purpose of informing non-union employees of their status as employees at-will. See Docket No. 13-3. In part, the bulletin provides that "[t]he Cooperative reserves the right to discharge the employee at any time. Continued employment will depend upon the employee's satisfactory performance and the Cooperative's determination of the need for their member services." Id. Humann's position description included a statement that the position was at-will: "Neither policies nor position descriptions are employment contracts. Employment at KEM Electric Cooperative, Inc. is at will and may be terminated by either party with or without cause." See Docket No. 13-5.

On April 30, 1996, Humann signed a form acknowledging the receipt of the bulletin. The form provided that the "Policy Manual does not create a contract between [the signing party] and

the Cooperative, that [the] employment has no specified term and may be terminated at the will of either the Cooperative or [the signing party]." See Docket No. 13-4. Humann admittedly received nothing in writing that changed her at-will status. See Deposition of Ramona Humann p. 29. Thus, Humann was an "at-will" employee at KEM and could be terminated with or without cause.

On April 22, 2002, Rudolph placed a letter of reprimand in Humann's file. The letter of reprimand described Humann's work behavior as insubordinate, and stated that further behavior of a similar nature would lead to her termination. Humann refused to sign the document and alleges that the document was placed in her file as retaliation for having rebuffed Rudolph's inappropriate advances.

The gist of the complaint centers on the events of November 14, 2003, through December 17, 2003. On or about November 14, 2003, Rudolph instructed Humann to conduct a number of reinspections of the load management system utilized by KEM. See Deposition of Rudolph, pp. 133-136; Deposition of Humann, p. 62. The reinspections required an examination of approximately 900 units. See Deposition of Rudolph, pp. 134-135. Humann was uncertain about how to accomplish the reinspection task as well as fulfill all of her regular job requirements and wrote a memo dated November 14, 2003 to Rudolph. The memo requested clarification on how to process the data that would be collected under her new duties and how her schedule should be set up as well as several other inquiries related to the performance of her job duties. See Deposition of Rudolph, pp. 137-142.

On November 18, 2003, Rudolph called Humann into his office to discuss the memo of November 14, 2003. That conversation became heated, and thereafter Rudolph placed Humann on five days of administrative leave. The contents of the office conversation are disputed, but it is

undisputed that the conversation ended when Rudolph ordered Humann to turn in her keys and leave the building. See Deposition of Rudolph, pp. 152-153; Deposition of Humann, p. 169.

Shortly after Humann left her employment, KEM's attorney, Thomas B. Bair, called Humann and informed her that she was placed on five days' administrative leave, and that he (Bair) represented the Board of Directors at KEM and that Humann should consult with an attorney. See Deposition of Humann, pp. 143-144. Bair asked Humann if she would return to work but the nature of her response is unclear. During that first telephone conversation, Bair conveyed a settlement offer and, although Humann did not immediately respond, she did make a counter offer later that day. See Deposition of Humann, pp. 146-148. During a second conversation with Bair, Humann asked for a letter to confirm her job status. See Deposition of Humann, pp. 148-149.

Later on November 18, 2003, and in response to the request, Humann received a hand-delivered letter signed by Rudolph and authored in significant part by Bair. See Deposition of Bair, pp. 35-36. Although it is unclear whether the letter was authored before or after the Board of Directors meeting, the contents of the letter were discussed at the board meeting. The letter advised Humann that her suspension with pay would continue until she received a written settlement/severance offer from KEM. See Deposition of Bair, pp. 35-36.

On December 9, 2003, Bair contacted Humann's attorney (Stephen Little) by letter and expressed his desire to reach an amicable settlement. See Docket No. 13-11. Little responded with a settlement demand on December 10, 2003. The demand letter also contained threats of litigation based on alleged promises to Humann of continued employment and purported evidence of age discrimination.

In mid-December 2003, Bair conducted an investigation into Humann's past employment conduct. See Deposition of Bair, p. 44. The investigation consisted of interviewing KEM employees. It appears that one of the purposes of the investigation was to determine the validity of the sex and age discrimination claims that were made in the December 10, 2003, demand letter from attorney Stephen Little. See Deposition of Bair, pp. 45-46. On December 17, 2003, and after utilizing the results of the investigation, Bair sent a letter to Little informing him that Humann's employment was being terminated effective December 17, 2003. See Docket No. 13-12.

There were several people who saw a copy of the termination letter of December 17, 2003. Those persons included Thomas Bair (who signed and mailed the letter), Stephen Little (counsel for Humann), Michael Rudolph (who provided the letter to the Board of Directors at KEM), employees of Job Service North Dakota, and witnesses called to testify at an administrative hearing conducted before Job Service. See Deposition of Humann, pp. 161-162. It is undisputed that the defendants did not publish the termination letter of December 17, 2003, to anyone other than Humann's attorney, Stephen Little. Humann provided a copy of the termination letter to her husband and children. It is undisputed that Humann's daughter forwarded a copy of the termination letter to other employees at KEM. See Deposition of Humann, pp. 119-120. Humann has not presented any evidence that the termination letter was published, nor has she offered any evidence that the KEM Board of Directors published or provided the letter to anyone. See Deposition of Humann, pp. 162-163.

The contents of the termination letter were neither published nor disclosed to any prospective employer with whom Humann interviewed. See Docket No. 20-1. The only prospective employer that granted Humann an interview was BEK Telephone ("BEK"). Id. When asked by BEK why she

5

left KEM, Humann said that general manager/CEO Rudolph had misinterpreted a memo she had given him, fired her, and provided her with a termination letter. See Deposition of Humann, p. 111. Humann testified that she had never provided BEK with a copy of the termination letter. Id.

## II.     STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.  LEGAL DISCUSSION

Humann's claims were removed to federal court based upon allegations of a Fair Labor Standards Act ("FLSA") violation. "A district court may exercise supplemental jurisdiction over state law claims that arise from the same nucleus of operative fact as the plaintiff's federal claims and when the plaintiff would ordinarily be expected to try all the claims in one judicial proceeding." Cossette v. Minnesota Power & Light, 188 F.3d 964, 973 (8th Cir. 1999). Under 28 U.S.C. § 1367(a), the pendent state claims in Humann's complaint are related to the FLSA claim and form a part of the same case or controversy. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

#### A.  AT-WILL EMPLOYMENT

It is well-established under North Dakota law that employment without a definite term is presumed to be at will. See Phillips v. Dickinson Management, Inc., 580 N.W.2d 148, 150 (N.D. 1988). The employment-at-will doctrine is codified at Section 34-03-01 of the North Dakota Century Code which provides as follows:

> An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title.

It is clear under North Dakota law that an employee can overcome the at-will presumption. However, promises of continued employment are generally not enough to do so. Hougum v. Valley Memorial Homes, 574 N.W.2d 812 (N.D. 1988). See also Hillesland v. Federal Land Bank Ass'n, 407 N.W.2d 206, 211 (N.D. 1987).

In order to overcome the presumption of at-will employment, the employee manual must reveal an intent that employment is not at-will. See Eldridge v. Evangelical Lutheran Good

Samaritan Society, 417 N.W.2d 797, 799 (N.D. 1987). An explicit and conspicuous disclaimer stating that the manual does not create contract rights makes it difficult for an employee to claim that language in the policy manual overcomes the presumption of at-will employment. See Dahlberg v. Lutheran Social Services of North Dakota, 625 N.W.2d 241 (N.D. 2001); Jose v. Norwest Bank of North Dakota, N.A., 599 N.W.2d 293 (N.D. 1999). In Jose, a written acknowledgment of the at-will status established as a matter of law that no contract of employment was formed. The employment policies in Jose included an at-will acknowledgment similar to the one that Humann signed.

It is undisputed that KEM's employment policies clearly recognize the employment at-will doctrine. Humann acknowledged in writing her at-will status. As a matter of law, the employment policies of KEM did not create an enforceable employment contract. As a result, Humann was an at-will employee under North Dakota law. Humann has sought relief based on tort theories of equitable estoppel or detrimental reliance, deceit, tortious interference with employment or contract, and defamation.

### B.   EQUITABLE ESTOPPEL – DETRIMENTAL RELIANCE

Humann has asserted a claim for relief based on "equitable estoppel" or "detrimental reliance." Detrimental reliance is not a separate cause of action but is merely one element of a claim of equitable estoppel. In essence, Humann contends that she believed she had continued employment at KEM until retirement and, as a result, she did not seek other employment opportunities and failed to take sick leave to which she was entitled.

Section 31-11-06 of the North Dakota Century Code recognizes the doctrine of equitable estoppel and provides as follows:

> Estoppel by declaration, act, or omission. When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

It is well-established in North Dakota that the doctrine of equitable estoppel requires that a plaintiff show the defendant engaged in conduct amounting to (1) a false representation or concealment; (2) the intention or expectation that the plaintiff would be influenced by the conduct; (3) defendant's knowledge of the real facts; and (4) reasonable reliance on the conduct. The plaintiff must have reasonably relied on the defendant's misconduct or false representations and there must have been some form of affirmative deception. See Global Acquisitions, LLC v. Broadway Park, Ltd. Partnership, 623 N.W.2d 442 (N.D. 2001).

In response to the motion for summary judgment, Humann provided a litany of alleged misrepresentations, namely (1) that KEM's personnel manual provided that Humann would have employment as long as she was performing her job satisfactorily; (2) Humann was told that an attorney would investigate her claims of discrimination; (3) that no severance package was intended to be offered to her; and (4) that KEM was willing to have Humann return to work after ordering her to surrender her keys on November 18, 2003.

The Court has carefully reviewed the claims of misconduct or false representations alleged by Humann to support a claim of equitable estoppel and finds that there is insufficient evidence to support such a claim. Humann's claim of equitable estoppel against KEM is essentially based on the "continued employment" language of KEM's internal policies on at-will employment. There have been no facts presented that would support a claim of equitable estoppel against Rudolph. The fact that Humann may have been left with the impression that she would remain an employee at KEM until retirement is not legally sufficient to establish detrimental reliance based on any alleged

9

misrepresentation. The fact that Humann continued her employment at KEM and did not take sick leave does not establish detrimental reliance. The North Dakota Supreme Court has made it clear that continuing employment is generally not sufficient evidence of detrimental reliance and the same would hold true with respect to an employee's decision not to take sick leave. See Dalan v. Paracelsus Healthcare Corp. of N.D., 640 N.W.2d 726 (N.D. 2002). The record before the Court does not support a finding that there were false representations made by the defendants nor a finding of detrimental reliance. The factual allegations made against KEM and Rudolph are insufficient as a matter of law to provide a basis for recovery based on a theory of equitable estoppel.

In viewing the evidence in a light most favorable to Humann, there are no genuine issues of material fact with respect to the claims of equitable estoppel against the defendants. The plaintiff has failed to present any evidence that KEM's conduct was performed with the intention or expectation that Humann would be influenced by the conduct, and no legally sufficient evidence has been presented that committed any affirmative acts of deception. The Court finds that there are no genuine issues of material fact as to the claim of equitable estoppel and that such a claim fails as a matter of law.

### C.   DECEIT

Humann has alleged that she was deceived by KEM, Rudolph and KEM attorney Bair because they told her that she was being placed on administrative leave when they actually planned to terminate her. See Complaint, ¶¶ 87 and 88.

Under North Dakota law, an action for fraud and deceit requires a misrepresentation of facts, suppression of facts, misleading of another, or promises without an intention of performing.

10

Schneider v. Schaaf, 603 N.W.2d 869 (N.D. 1999); see N.D.C.C. ¶¶ 9-03-08 and 9-10-02. It is well-established that proof of actual damages proximately caused by the deceitful conduct is an essential element of the action. Id. Thus, Humann has the burden of presenting evidence of actual damages as well as establishing that the damages were proximately caused by the alleged deceitful actions or misrepresentations. See Eckmann v. Northwestern Federal Sav. & Loan Ass'n, 436 N.W.2d 258, 260 (N.D. 1989).

On November 18, 2003, Humann was placed on administrative leave. KEM attorney Bair called her on behalf of the Board of Directors and asked if she would return to work. KEM, through attorney Bair, then entered into settlement negotiations with Humann which continued until mid-December 2003. It is clear and undisputed from the record that Humann was placed on paid administrative leave until December 17, 2003, and that prior to that time KEM's attorney (Bair), and Humann's attorney (Stephen Little), were discussing settlement. Those discussions did not result in a settlement and KEM ultimately terminated Humann effective December 17, 2003.

The record lacks sufficient evidence to support a finding that there was an intention to terminate Humann at the time she was first placed on administrative leave on November 18, 2003. KEM requested that attorney Bair call Humann to determine if she was willing to return to work and that took place after she was placed on administrative leave. It is important to note that Humann admitted that she can point to no evidence that KEM/Bair subsequently looked for reasons to justify her termination. See Deposition of Humann, p. 269. Even assuming for the sake of argument that there were misrepresentations that would arguably support a cause of action for deceit, Humann has failed to establish actual damages which proximately resulted from KEM's decision to place her on administrative leave with pay until December 17, 2003. KEM had the legal right to terminate

11

Humann on November 18, 2003, because she was an at-will employee. Instead, she was placed on administrative leave with pay and benefits while KEM investigated the matter and attempted to reach an amicable settlement.[1]

In summary, when viewed in a light most favorable to Humann, there are no genuine issues of material fact to support a claim of fraud or deceit. The record is devoid of legally sufficient evidence to support a claim that KEM, Rudolph, or Bair knowingly made false statements or misrepresented facts to Humann that was the proximate cause of damages related to the alleged deceitful conduct. The Court finds that there are no genuine issues of material fact as to the claim of deceit and that the claim fails as a matter of law.

### D.  TORTIOUS INTERFERENCE WITH EMPLOYMENT (CONTRACT)

Under North Dakota law, the tort of interference with contract requires a showing that (1) a contract existed; (2) the contract was breached; (3) the defendant instigated the breach; (4) the defendant instigated the breach without justification; and (5) the defendant acted intentionally. See ANR Western Coal Development Co. v. Basin Elec. Power Co-op., 276 F.3d 957, 972 (8th Cir. 2002).

As previously noted, Humann did not have an employment contract with KEM. Humann was an at-will employee under North Dakota law. Therefore, as a matter of law, the plaintiff cannot establish that a contract existed or that the contract was breached which are two essential elements of a claim for tortious interference with contract.

---

[1] The record reveals that an initial settlement offer of $28,000 was conveyed to Humann by KEM on November 18, 2003. There was a counteroffer from the plaintiff on December 10, 2003, and negotiations broke down shortly thereafter.

Further, even if the evidence established that Humann did have an employment contract with KEM that had been breached, it is questionable at best whether a claim of tortious interference with contract against KEM and/or Rudolph as general manager/CEO has any merit because there is authority that an employer cannot be liable for tortious interference with its own employment contract with its employees. See Borecki v. Eastern Intern. Management Corp., 694 F.Supp. 47, 56 (D.N.J. 1988) and Hickman v. Winston County Hosp. D.D., 508 So.2d 237, 238 (A.L.A. 1987). In other words, the conduct of an employer who arguably breached its own employment contract with an employee does not give rise to a cause of action for the tort of intentional interference with business or contractual relations. See Koehler v. County of Grand Forks, 658 N.W.2d 741, 748 (N.D. 2003) ("tortious interference with contract ordinarily arises when the defendant intentionally induces a **third party** to breach its contract with the plaintiff"). Neither KEM nor Rudolph as its general manager/CEO would be considered to be a third party that intentionally interfered with the employment relationship with the plaintiff.

In a responsive brief Humann essentially acknowledged that she does not have a claim for tortious interference of contract because no contract existed. See Docket 20-1. Instead, Humann has cited to Sections 34-01-04 and 34-01-06 of the North Dakota Century Code as authority for a civil claim of tortious interference with an employment contract. However, neither of these statutory provisions creates a private cause of action and both statutes are criminal in nature. There has been no evidence presented that the Legislative Assembly of North Dakota intended to create a private cause of action through the enactment of Section 34-01-04 or 34-01-06, nor is there any North Dakota case law that has recognized the creation of such a private cause of action based on these statutory provisions.

13

In summary, the Court finds that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law on this claim. Accordingly, Humann's claim for tortious interference with contract or employment must be dismissed.

### E.     DEFAMATION

In her complaint, Humann also alleges that she was defamed by attorney Bair's letter of December 17, 2003. See Complaint, ¶¶ 39, 40, 42, 55, and 57. It is undisputed that this letter was sent by Bair to Humann's attorney, Stephen Little. The basis for the element of publication is Humann's claim that she was forced to self-publish the letter in her applications for employment with prospective employers.

Under North Dakota law, defamation is classified as either libel or slander. N.D.C.C. § 14-02-02 (2005). Libel is "a false and unprivileged publication by writing ... which has a tendency to injure the person and the person's occupation." N.D.C.C. § 14-02-03. However, there is no liability for defamatory statements that are privileged. Soentgen v. Quain & Ramstad Clinic, P.C., 467 N.W.2d 73, 77 (N.D. 1991). Section 14-02-05 of the North Dakota Century Code recognizes communications that are deemed to be privileged and provides as follows:

Privileged communications. A privileged communication is one made:

1. In the proper discharge of an official duty;

2. In any legislative or judicial proceeding or in any other proceeding authorized by law;

3. In a communication, without malice, to a person interested therein by one who also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information; and

>4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.
>
>In the cases provided for in subsections 3 and 4, malice is not inferred from the communication or publication.

The Restatement (Second) of Torts, §§ 586 and 587 (1977) recognize that an attorney or party's statement is absolutely privileged if made in the context of judicial proceedings, even if made preliminary to a proposed judicial proceeding, so long as the matter has some relation to the proceeding. Section 586 provides:

>An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications <u>preliminary to a proposed judicial proceeding</u>, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Section 587 provides:

>A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Although an exhaustive search of North Dakota case law has produced no cases specifically relying on Sections 586 or 587 of the Restatement (Second) of Torts, the North Dakota Supreme Court has recognized the Restatement as "carefully studied and precisely stated summaries of basic principles of law," which are "entitled to respect as authoritative and reasoned outlines of the law." <u>Barsness v. General Diesel & Equipment Co., Inc.</u>, 383 N.W.2d 840, 842 n.1 (N.D. 1986).

It is undisputed that the communication by KEM attorney Bair to Humann's attorney (Stephen Little), was preliminary to a "judicial proceeding." The letter of December 17, 2003, from Bair was written after the December 10, 2003, settlement demand from Humann and was, in part, a rejection of that counterproposal for settlement. The Court finds that the letter of December 17,

15

2003, from attorney Bair was, as a matter of law, absolutely privileged because Bair's communication was made preliminary to and related to a proposed or threatened judicial proceeding. Such a finding promotes the public policy that a person should be able to prepare or resist a legal proceeding without fear of an action for defamation. The letter from attorney Bair concerned the employment dispute between Humann and KEM. The ill-advised letter was exchanged between attorneys in the midst of settlement negotiations. Bair's letter of December 17, 2003, was sufficiently related to a proposed judicial proceeding as well as to the current judicial proceedings. The communication is privileged under North Dakota law and cannot form a basis for a claim of defamation.

Humann argues that the letter of December 17, 2003, was not the sole basis for a claim of defamation. She contends that regardless of the defamatory status of the termination letter, attorney Bair testified as a witness at an unemployment compensation hearing before Job Service North Dakota and his testimony also constitutes defamation.

Section 14-02-05 of the North Dakota Century Code provides that any communication made in any legislative or judicial proceeding, or in any other proceeding authorized by law, is privileged. North Dakota law provides an absolute privilege for defamatory statements made at judicial proceedings even if made with malice. Rykowsky v. Dickinson Pub. School Dist. No. 1, 508 N.W.2d 348, 351 (N.D. 1993).

In Rykowsky, the North Dakota Supreme Court recognized that school board meetings were deemed to be other proceedings authorized by law within the meaning of Section 14-02-05. Job Service North Dakota is an administrative agency within the meaning of the definition set forth in Section 28-32-01(2) of the North Dakota Century Code. Lord v. Job Serv., 343 N.W.2d 92 (N.D.

1984). Job Service is authorized by law to conduct adjudicative proceedings. The Court finds, as a matter of law, that an unemployment compensation hearing conducted by Job Service North Dakota is a "proceeding authorized by law" and that statements made an attorney called as a witness at such proceedings are privileged under North Dakota law.

Finally, it is well-established that actionable defamation requires publication which in turn requires a communication of the alleged defamatory matter to a third person. Emo v. Milbank Mut. Ins. Co., 183 N.W.2d 508, 512 (N.D. 1971). It is undisputed that the defendants did not "publish" the termination letter of December 17, 2003, to anyone other than Humann's attorney. Humann alleges in her complaint that she was compelled to self-publish the December 17, 2003, termination letter but she admitted in her deposition that she did not show the letter to any prospective employer. See Deposition of Humann, p. 108. Humann never discussed the letter with a prospective employer except in one interview with BEK Telephone. Humann had not applied for any jobs other than for a job opening at BEK Telephone. See Deposition of Humann, p. 237. When Humann was asked by BEK Telephone representatives why she had left her employment at KEM, Humann said that Rudolph had misinterpreted a memo that she had given him, fired her, and then given her a termination letter. See Deposition of Humann, p. 111. Although Humann advised BEK Telephone of her termination, she admittedly never showed the termination letter to BEK.

The only other "publications" of the alleged defamatory contents of the termination letter were to a law enforcement officer that Humann spoke with and to members of her immediate family. Because Humann or immediate family members caused these instances of publication, and the "publications" were neither compelled nor made to a prospective employer, the Court finds, as a matter of law, that such actions do not satisfy the publication requirement needed to legally establish

17

a claim of defamation. Further, any purported damages that may have occurred were the result of Humann's self-publication of the termination letter rather than damages that were proximately caused by any actions of the defendants. Humann's self-publication of the termination letter does not, as a matter of law, fulfill the elements of publication under North Dakota law. The claim of defamation must fail because the plaintiff can neither establish publication nor any provable economic damages.

Having reviewed the evidence in a light most favorable to Humann, the Court finds, as a matter of law, that the plaintiff has not created a genuine issue of material fact and that summary judgment is appropriate as to the claim of defamation.

### F.     **OVERTIME COMPENSATION**

Finally, Humann alleges that she is entitled to overtime compensation under the Fair Labor Standards Act (FLSA). Humann was the Manager of Member Services and Marketing at KEM. She contends that a portion of her work duties involved clerical functions and, as a result, she should be considered a non-exempt employee who is entitled to overtime compensation under the FLSA. The Fair Labor Standards Act requires employers to pay employees overtime pay for working more than forty (40) hours in a work week. However, an employee is exempt from the overtime requirement if employed in a professional or administrative capacity. See 29 U.S.C. § 213(a)(1).

The regulations that were in effect during Humman's employment at KEM used a "short test" for high-salaried administrative employees to determine if an employee was a bona fide administrative employee. In Spenden v. GS Roofing Products Co., Inc., 94 F.3d 421, 426 (8th Cir. 1996) cert denied, 520 U.S. 1120 (1997), the Eighth Circuit held that a company controller was an

administrative exempt employee based on his being a member of the management team, his participation in management meetings, and his role in the operations of the employer:

> Under the short test, an employee qualifies for the administrative exemption if his "primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customer's], which includes work requiring the exercise of discretion and independent judgment."

Id. (citing 29 C.F.R. § 541.2(e)(2) (incorporating 29 C.F.R. § 542.2(a)(1)). See also Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1081 (8th Cir. 2000).

The record reveals that Humann, as the Manager of Member Services and Marketing, was paid a salary of at least $250 per week which was the threshold salary requirement of an exempt employee at the time of her termination. Humann's salary was in excess of $2,488 per month since 1992. Humann's job description reveals that she performed office work related to the management and general business operations of KEM. It is important to note that Humann acknowledged during her deposition that she considered herself to be a part of the management team. See Deposition of Humann, p. 203. Humann testified that she was responsible for providing input into the long-term and short-term planning of KEM's objectives, goals, and policies, and that she was involved in developing marketing programs, planning and organizing member activities, and performing various supervisory responsibilities. Id. at 203-204. The record supports a finding that Humann's duties consisted of office and non-manual work that was related to the management policies and general business operations of KEM and its customers. Her performance of such duties also included some "work requiring the exercise of discretion and independent judgment." See 29 C.F.R. § 541.214(a) (2003). See also McAllister v. TransAmerica Occidental Life Ins. Co., 325 F.3d 997, 1000 (8th Cir. 2003).

Humann was paid a flat, pre-established salary amount per pay period which clearly met the salary-basis test as a matter of law. Although the record supports a finding that Humann performed some clerical duties in her position, by her own admission most of her duties and responsibilities meet the elements of the "short test" for high-salaried administrative employees as pronounced by the Eighth Circuit. Her level of compensation and the type of duties and responsibilities that she generally performed as Manager of Member Services and Marketing support a finding that Humann was a bona fide administrative exempt employee. As a matter of law, she was not entitled to overtime compensation.

The Court has carefully reviewed the entire record, reviewed the depositions on record, and reviewed current case law in the Eighth Circuit. In viewing the evidence in a light most favorable to Humann, the Court finds, as a matter of law, that the plaintiff has not created a genuine issue of material fact and that summary judgment is appropriate as to the claim for overtime compensation under the Fair Labor Standards Act.

Accordingly, the claims of the plaintiff are dismissed with prejudice.

Dated this 29th day of August, 2006.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court